# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| ZACHARY C. HERNDON, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) **Case no. 4:09cv1889 TCM** |
| | ) |
| JEFF NORMAN, | ) |
| | ) |
| Respondent.[1] | ) |

## MEMORANDUM AND ORDER

Zachary C. Herndon (Petitioner), a Missouri prisoner, petitions the United States District Court for the Eastern District of Missouri for federal habeas corpus relief from a 2006 conviction following a jury trial. See 28 U.S.C. § 2254. Respondent filed a response [Doc. 12].

This matter is before the undersigned United States Magistrate Judge for review and final disposition of the petition.[2] Finding that the pending federal habeas petition presents

---

[1] The record reveals that Petitioner is incarcerated at the Jefferson City Correctional Center (JCCC), where Jeff Norman is now the Warden. Therefore, the Court will substitute Norman for the originally named Respondent, Dave Dormire, who was the warden at the JCCC at the time Petitioner filed this federal habeas action. See Rule 2 (a), Rules Governing Section 2254 Cases in the United States District Courts.

Additionally, Petitioner is serving concurrent terms of imprisonment as a result of the judgment he is now challenging. Therefore, it is not necessary to name the Attorney General of Missouri, Chris Koster, as a respondent, although he is named in the caption of Petitioner's habeas petition, because in this habeas proceeding Petitioner is not challenging a sentence he will serve in the future. See Rule 2(b), Rules Governing Section 2254 Cases in the United States District Courts.

[2] This matter is before the undersigned United States Magistrate Judge on consent of the parties. 28 U.S.C. § 636(c).

nine grounds for relief, that three of the claims are procedurally barred, and that the other six claims lack merit, this Court will deny the petition without further proceedings.

## **Background**

Petitioner was charged, as a prior and persistent offender, with first degree robbery, in violation of Mo. Rev. Stat. § 569.020, and armed criminal action, in violation of Mo. Rev. Stat. § 571.015, for forcibly stealing a vehicle from Sylvia McNeal ("Victim") on March 17, 2005, while displaying what appeared to be a deadly weapon. (Compl., filed May 5, 2005, Legal File, Resp't Ex. B, at 12-14; Indictment, filed June 7, 2005, Legal File, Resp't Ex. B, at 15-16; Substitute Info. in lieu of Indictment, filed Feb. 21, 2006, Legal File, Resp't Ex. B, at 17-18.)

Prior to trial Petitioner filed a motion to suppress identification (Pet'r Mot. Suppress, filed Feb. 15, 2006, Legal File, Resp't Ex. B, at 24-25), a motion to have a videotape redacted (id. at 30-31), a motion in limine to exclude evidence of prior bad acts and uncharged crimes, including a car chase occurring after the charged offenses (id. at 32-33), a motion in limine to exclude evidence of Elise Donaldson's statements to the police (id. at 34-36), and a motion to suppress evidence (id. at 37-38).

After voir dire, and outside the presence of the jury, the parties and trial court discussed certain pretrial matters (Trial Tr., Resp't Ex. A, at 161-91.) In relevant part, the trial court indicated concern about "prejudicial matter" in a newscast videotape that was going to be introduced into evidence, and the parties agreed to redaction of that tape (id. at 180-86); allowed evidence of the car chase that occurred after the offenses at issue in this case, but not

evidence of injuries resulting from that car chase (id. at 188-89); and sustained Petitioner's motion in limine to prevent evidence of his prior convictions and bad acts unless he took the witness stand (id. at 189-90).

At the jury trial,[3] held in February 2006, the State presented the testimony of Victim who, in relevant part, identified Petitioner as the person who displayed a gun and took her rental car at approximately 10:00 p.m. on March 17, 2005 when she parked alongside a gas station, and who testified that, as a result of the incident, she soiled herself so, instead of going in the gas station, she called her son to take her home, where she cleaned up and then called the car rental agency and the police (id. at 199-267, 207-08, 236-37); John Clobes, an officer for the St. Louis Metropolitan Police Department who is the custodian of the tapes of 911 telephone calls received by that police department and who identified the recording of Victim's 911 call that police department received at 12:25 a.m. on March 18, 2005 (id. at 268-72); John Dailey, Victim's son, who picked Victim up at the gas station and drove her home after the incident (id. at 272-83); Juan Fowler, an officer with the East St. Louis Police Department, who located the vehicle at approximately 6:00 p.m. on March 18, 2005, with four occupants in it and then followed the vehicle as it picked up speed and until his car "spun out" during the car chase (id. at 284-92); Dan Hill, a detective with the East St. Louis Police Department assigned, at the time of this incident, to the auto theft task force, who helped end the car chase and tazed Petitioner, the driver of the vehicle, when he would not get out of the

---

[3] During trial, Petitioner was represented by Teneil Kellerman except during the instruction conference, when Michelle Morgan, who had attended trial, represented Petitioner alone. (Trial Tr., Resp't Ex. A, at 5, 373-76.)

vehicle as directed (id. at 292-301); Eric Owen, an investigator for the Metro East Auto Theft Task Force in Illinois who inspected and photographed the vehicle after it was towed and who found a loaded, semi-automatic handgun underneath the front seat, toward the passenger side, of the vehicle (id. at 301-17); Richard Amberger, a forensic scientist with the Division of Forensic Services of the Illinois State Police, who examined the gun and ammunition found in the vehicle (id. at 317-27); Jocelyn Mercier, who works for the Central Patrol Detective Bureau of the St. Louis Metropolitan Police Department and who showed Victim two photo spreads on March 22, 2005, with one photo spread, referred to as State's Exhibit 6A, having a picture of Petitioner in photo number two and the other photo spread, referred to as State's Exhibit 6B, having a picture of Markel Sims[4] in photo number one, and who testified that Victim immediately selected the picture of Petitioner as the person who approached her vehicle and ordered her, at gunpoint, to get out of the car (id. at 327-53). The State also introduced during trial, among other things, the recording of Victim's call to 911 (id. at 270-72), documents from the rental car company regarding Victim's reporting of the stolen rental car and the recovery of that car in Illinois (id. at 283-84), the handgun and ammunition found in the vehicle (id. at 306-07), pictures of the vehicle and gun found inside the vehicle after the car chase (id. at 308-11), a portion of a newscast videotape (id. at 225-230), the two photo spreads shown to Victim (id. at 351), and the gas station's surveillance videotape for the period around the time of the robbery (id. at 349).

---

[4] This person's last name is spelled "Sims" or "Simms" in the record. See, e.g., Pet'r Pet. [Doc. 1 at 19]; Trial Tr., Resp't Ex. A at 330.

The trial court denied Petitioner's motion for judgment at the close of the State's evidence (id. at 355-57). Petitioner did not testify (id. at 377-379) and presented the testimony of the following two police officers. Billy March, a detective with the St. Louis Metropolitan Police Department, who was the lead investigator and went to the East St. Louis police department to watch taped statements of the four occupants of the vehicle taken after the car chase, spoke with Victim, and investigated the gas station where the incident occurred. (Id. at 358-69). Desmond Williams, an officer with the East St. Louis Police Department assigned to the Metro East Auto Theft Task Force, who interviewed Petitioner after the car chase. (Id. at 388-400). Additionally, through an offer of proof made outside the presence of the jury, Petitioner presented the testimony of Officer Williams that Sims was charged with possession of the gun found in the vehicle after the car chase. (Id. at 379-82.)

The trial court denied Petitioner's motion for judgment at the close of all the evidence; and considered Petitioner's motions to suppress. (Id. at 400, 402.) The trial court denied Petitioner's motion to suppress the gun, concluding that "the jury can make a determination whether or not this was in fact the same gun that was used in the robbery." (Id. at 401.) While acknowledging that it had some concerns about Victim's viewing of a newscast showing Petitioner's picture before she made an out-of-court identification of Petitioner, the trial court denied Petitioner's motion to suppress identification because Victim "never really wavered on her ability to identify" Petitioner and "her testimony as to her being able to recognize" him was sufficient. (Id. at 401-02.)

The trial court then gave the jury instructions, including one stating that "[u]nder the law, a defendant has the right not to testify. No presumption of guilt may be raised and no inference of any kind may be drawn from the fact that the defendant did not testify." (Instr. No. 8, Legal File, Resp't Ex. B, at 59.)

During her rebuttal closing argument, the prosecutor stated in relevant part:

> How do we know that [Petitioner] did it? The defense - this evidence is uncontroverted. [Petitioner] was driving th[e stolen] car the next day. The defense wants to make light of that, but isn't it a coincidence? Reasonableness in light of all the testimony. [Petitioner] would have you believe that he just happens to be driving this stolen car the next day, that he just happens to be driving a stolen car with that gun in it the next day, that it just happens to be a gun that is the exact same kind of gun that robbed [Victim] the night before, and that [Petitioner] just happens to be the person that she picked out. . . .

> *   *   *

> Manner while testifying. [Victim] is - how was [Victim] when she came in? She was quiet. She's composed. She's embarrassed. She's told you repeatedly over and over again. Manner while testifying. You heard the other state's witnesses, the officers. That testimony is uncontroverted. The defense tried to distract you with some other evidence I guess about police conduct[.] I'm not quite sure. Every one of you is here because you agreed that we're not here to decide policy for the police. This is just a distraction about whether [Petitioner] committed the crime of robbery in the first degree and armed criminal action. [Petitioner] has a right not to testify and you have an instruction about that. They are trying to distract you.

(Trial Tr., Resp't Ex. A, at 421-22.)

The jury found Petitioner guilty of the charges. (Verdicts, Legal File, Resp't Ex. B, at 64, 65; Trial Tr., Resp't Ex. A, at 426.) Having found Petitioner was a prior and persistent offender, and after denying Petitioner's motion for judgment of acquittal notwithstanding the verdict of the jury or in the alternative motion for new trial, the trial court sentenced Petitioner

to concurrent terms of imprisonment of twenty years for first-degree robbery and ten years for armed criminal action, which sentence also ran concurrent with a five-year sentence in Illinois that Petitioner was then serving.  (Trial Tr., Resp't Ex. A, at 383-84, 428, 429-30; Sentence and J., Legal File, Resp't Ex. B, at 71-73.)

Petitioner raised five points in his timely direct appeal.  (Notice of Appeal, Legal File, Resp't Ex. D, at 74-75; Pet'r Br., Resp't Ex. C, at 8-13, 14, 18, 21, 26, and 32.)  In his first point, Petitioner argued that his Fifth, Sixth, and Fourteenth Amendment rights to due process, to a fair trial, and to a fair and impartial jury were violated by the trial court's denial of Petitioner's motion for a mistrial after the State showed the jury previously-excluded portions of the videotape containing information relating to prior uncharged crimes and bad acts.  (Pet'r Br., Resp't Ex. C at 8 and 14.)  In his second point, Petitioner contended that his Fifth, Sixth, and Fourteenth Amendments to due process and a fair trial were violated when the trial court failed to declare a mistrial <u>sua</u> <u>sponte</u> when, during closing argument, the prosecutor commented on Petitioner's failure to testify.  (<u>Id.</u> at 9 and 18.)  For his third point, Petitioner urged that his rights to due process and a fair trial as guaranteed by the Fifth, Sixth, and Fourteenth Amendments were violated when the trial court overruled Petitioner's motion to suppress Victim's in-court and out-of-court identifications, and admitted those identifications at trial, because those identifications resulted from unnecessarily suggestive police procedure.  (<u>Id.</u> at 10 and 21.)  For his fourth point on direct appeal, Petitioner argued that his rights to due process, "a fair jury trial," a defense, confrontation and cross-examination, and "reliable sentencing" as guaranteed by the Fifth, Sixth, and Fourteenth

Amendments were violated by the trial court's exclusion of evidence linking Sims to the weapon allegedly used in the robbery, which evidence supported Petitioner's defense that he did not commit the crime. (<u>Id.</u> at 11-12 and 26.) In his fifth and final point on direct appeal, Petitioner contended that his Fifth, Sixth, and Fourteenth Amendment rights to due process and a fair trial were violated by the trial court admitting, over Petitioner's objections, evidence of the car chase that occurred approximately one day after the robbery. (<u>Id.</u> at 13 and 32.)

Without explanation, the Missouri Court of Appeals for the Eastern District of Missouri summarily affirmed the trial court's sentence and judgment in a <u>per</u> <u>curiam</u> order. (Per curiam Order, dated May 1, 2007, available at **State v. Herndon**, 220 S.W.3d 888 (Mo. Ct. App. 2007) (per curiam).)[5]

---

[5] In full, the Missouri Court of Appeals stated:

Zachary Herndon (hereinafter, "[Petitioner]") appeals from the trial court's judgment after a jury found him guilty of robbery in the first degree, Section 569.020 RSMo (2000), and armed criminal action, Section 571.015 RSMo (2000). [Petitioner] was sentenced to twenty years' imprisonment on the charge of robbery in the first degree and ten years' imprisonment on the charge of armed criminal action, to run concurrently and concurrently with [Petitioner]'s sentence in Illinois.

[Petitioner] raises five points on appeal. He claims: (1) he should have received a mistrial after the jury viewed previously-excluded portions of a videotape; (2) it was plain error for a mistrial to not be granted <u>sua</u> <u>sponte</u> after the State commented in its closing argument regarding [Petitioner's] failure to testify; (3) the trial court committed plain error in overruling his motion to suppress [V]ictim's identification of [Petitioner]; (4) the trial court erred in allowing the State's comments to the jury that "this evidence is uncontroverted" when there was evidence of another person possessing the weapon used; and (5) the trial court erred in allowing prejudicial and inflammatory evidence regarding the car chase which occurred the day after the robbery.

We have reviewed the briefs of the parties and the record on appeal. No jurisprudential purpose would be served by a written opinion reciting the detailed facts

On May 23, 2007, the state appellate court issued its mandate in the direct appeal. (See docket sheet for State v. Herndon, No. ED 88077 (Mo. Ct. App. filed May 19, 2006) (available at https://www.courts.mo.gov/casenet/cases/searchDockets.do (last visited Mar. 25, 2013)). Petitioner did not seek further review of the affirmance of his conviction. (Id.)

On July 17, 2007, Petitioner filed a timely pro se motion seeking post-conviction relief under Missouri Supreme Court Rule 29.15 ("post-conviction motion"). In that motion, Petitioner sought relief on four grounds, three seeking relief due to the ineffective assistance of Petitioner's trial counsel and one seeking relief for prosecutorial misconduct. (Post-Conviction Legal File, Resp't Ex. E, at 3-9.) More specifically, Petitioner urged that his trial attorney failed to send him a copy of "Victim['s] or witnesses['] deposition[s] so [Petitioner] could raise certain questions to prove [his] innocence at trial"; his trial attorney "did not call [the] gas station attendant to testify as to what happened the night of the alleged robbery"; and his trial attorney "did not call [Petitioner's] witness to testify about [Petitioner's] whereabouts at the time of the alleged robbery." (Id. at 4.) With respect to the alleged prosecutorial misconduct, Petitioner contends the prosecutor failed to disclose the "video security monitored footage from the gas station and other adjacent or neighboring places of business." (Id. at 9.)

---

and restating the principles of law.

> The judgment is affirmed pursuant to [Mo. Sup. Ct.] Rule 30.25.

**State v. Herndon**, 220 S.W.3d 888 (Mo. Ct. App. 2007).

Petitioner subsequently filed, through appointed counsel, an amended post-conviction motion, which contained two claims of ineffective assistance of Petitioner's trial attorneys and a request for an evidentiary hearing. (Pet'r Am. Post- Conviction Mot., Supp. Post-Conviction Legal File, Resp't Ex. I.) Petitioner first argued that Kellerman provided ineffective assistance by failing to object to the prosecutor's closing argument that referred to Petitioner's decision not to testify (id. at 5-10), and next urged that Morgan provided ineffective assistance by failing either to object to the instruction submitted for armed criminal action or to request a proper armed criminal action instruction (id. at 10-16).

The post-conviction motion court denied Petitioner's request for an evidentiary hearing upon concluding a review of the record showed Petitioner had "failed to allege grounds that would entitle him to relief if true and that were not refuted by the record." (Concl. of Law and Order ("Judgment"), dated Jan. 8, 2008, Post-Conviction Legal File, Resp't Ex. E, at 31 and 34.) That court also denied Petitioner's amended post-conviction motion. (Id. at 31-34.)

Petitioner presented two points in his timely post-conviction appeal. In his first point, Petitioner urged his Fifth, Sixth, and Fourteenth Amendment rights to due process, to present a defense, to effective assistance of counsel, to a fair trial, and not to testify were violated by the post-conviction motion court's denial, without a hearing, of his claim that his trial attorney's failure to object to the prosecutor's characterization of evidence as "uncontroverted" during closing argument constituted ineffective assistance of counsel, because that characterization was a comment on Petitioner's decision not to testify. (Pet'r Br., Resp't Ex. F, at 15 and 18.) For his second point, Petitioner argued that his rights to due process, to

present a defense, to effective assistance of counsel, and to a fair trial were violated by the post-conviction motion court's denial, without a hearing, of his claim that his trial attorney provided ineffective assistance by failing to object to the armed criminal action instruction and to offer a proper armed criminal action instruction. (Id. at 16 and 28.)

The Missouri Court of Appeals for the Eastern District affirmed the denial of Petitioner's post-conviction motion in a summary order, supplemented by a memorandum, sent only to the parties, setting forth the reasons for the decision. (Per Curiam Order and Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), dated Feb. 3, 2009, Resp't Ex. H.) Citing to **Strickland v. Washington**, 466 U.S. 668 (1984), and finding that the record supported the motion court's conclusions, the state appellate court denied Petitioner's points on appeal. (Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), dated Feb. 3, 2009, Resp't Ex. H.) In relevant part, the state appellate court found:

> In his first point on appeal, [Petitioner] claims the motion court clearly erred in denying his motion for post-conviction relief without an evidentiary hearing because his trial counsel was ineffective for failing to object during closing argument when the prosecutor improperly referred to his decision not to testify. [Petitioner] alleges the jury was allowed to use his decision as evidence of his guilt. [Petitioner] believes that had his trial counsel objected, this point would have been preserved for appeal and the outcome of [Petitioner]'s direct appeal would have been different.

> "Issues decided on direct appeal will not be reconsidered" in post-conviction proceedings. Edwards[ v. State], 200 S.W.3d [500,] 512 [(Mo. banc 2006),] (*quoting* Leisure v. State, 828 S.W.2d 872, 874 (Mo. banc 1992)).

> Claims of trial error will only be considered in a [post-conviction] motion where fundamental fairness requires, and then, only in rare and exceptional circumstances. If the alleged misconduct was apparent at trial, then it is an issue for direct

appeal, not a [post-conviction] proceeding. Accordingly, this Court has reviewed claims of prosecutorial misconduct in a [post-conviction] proceeding when the alleged misconduct was serious and would not be apparent during the trial.

Tisius v. State, 183 S.W.3d 207, 212 (Mo. banc 2006) (internal citation omitted).

[Petitioner] raised this exact argument in his direct appeal. The only allegation of error was the prosecutor's commentary during closing argument, stating the evidence in this case was "uncontroverted." In this instance, fundamental fairness does not require the adjudication of [Petitioner]'s claim that the prosecutor made objectionable statements in closing argument which [Petitioner] recognized and raised as issues in his direct appeal. Therefore, post-conviction review is unavailable. Point denied.

In his second point on appeal, [Petitioner] alleges the motion court clearly erred in denying his motion for post-conviction relief without an evidentiary hearing because his trial counsel failed to object to the armed criminal action instruction. [Petitioner] claims the instruction failed to comply with the current version of the MAI for armed criminal action in that it lacked the applicable *mens rea*.

[Petitioner] acknowledges the version of the MAI for armed criminal action in effect at the time of his trial did not include a mental state and [the jury instruction given] complied with the applicable MAI at the time of trial. The MAI for armed criminal action was modified to include a mental state, effective January 1, 2007, nearly one year after [Petitioner]'s trial. While the changes in the MAI were in response to holdings in State v. Williams, 126 S.W.3d 377 (Mo. banc 2004) and State v. Belton, 153 S.W.3d 307 (Mo. banc 2005), we do not believe that attorneys should be held to a strict standard requiring them to predict future changes in the law and to make all possible objections at trial based upon those potential insights. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Accordingly, [Petitioner]'s trial counsel was not ineffective for [not] objecting to a legally current and permissible MAI instruction. Point denied.

The judgment of the motion court is affirmed.

(Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b) , dated Feb. 3, 2009, Resp't Ex. H, at 3-5.)

The state appellate court issued its mandate on February 25, 2009. (See docket sheet for Herndon v. Missouri, No. ED90953 (Mo. Ct. App. filed Feb. 15, 2008) (available at https://www.courts.mo.gov/casenet/cases/searchDockets.do (last visited Mar. 25, 2013)).

Petitioner then filed his timely federal habeas petition [Doc. 1], presenting nine grounds for relief. Petitioner first alleges that Kellerman provided ineffective assistance of counsel, in violation of the Sixth and Fourteenth Amendments, by failing to object to the prosecutor's statements, during closing, that improperly referred to Petitioner's failure to testify. (Pet'r Pet. [Doc. 1 at 16-17].) For ground two, Petitioner alleges that the trial court violated Petitioner's rights to due process and a fair and impartial jury, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments, by denying his motion in limine asking that the prosecutor be prohibited from presenting evidence that Petitioner was involved in a car chase about one day after the offenses. (Id. [Doc. 1 at 18].) Petitioner alleges in ground three that the trial court violated his right to due process as guaranteed by the Fifth and Fourteenth Amendments by granting the State's motion in limine preventing Petitioner from introducing evidence that Sims was charged with possessing the gun that was allegedly used in the offenses and that was found in the vehicle after the car chase. (Id. [Doc. 1 at 19].) In ground four, Petitioner alleges that his Fifth, Sixth, and Fourteenth Amendment rights to due process and a fair and impartial jury were violated by the trial court's denial of Petitioner's motion to suppress Victim's identification of Petitioner. (Id. [Doc. 1 at 20].) For ground five, Petitioner

alleges that his right to due process as guaranteed by the Fifth and Fourteenth Amendments was violated by the trial court's denial of Petitioner's motion to suppress the gun. (Id. [Doc. 1 at 21].) Petitioner alleges in ground six that his right to due process as guaranteed by the Fifth and Fourteenth Amendments was violated by the trial court's denial of Petitioner's motion for a mistrial, which Petitioner sought when the prosecutor showed the jury portions of the videotape that the trial court had ruled, prior to trial, was inadmissible. (Id. [Doc. 1 at 22].) For ground seven, Petitioner alleges that the trial court violated his Fifth and Fourteenth Amendments' right to due process by granting the State's motion to exclude Petitioner's statement to the police, which was made when Petitioner was arrested. (Id. [Doc. 1 at 23].) For his eighth ground for relief, Petitioner alleges that the trial court violated his right to due process as guaranteed under the Fifth and Fourteenth Amendments by overruling his motions for judgment of acquittal at the close of the State's case and at the close of all the evidence because there was insufficient evidence to support the charges. (Id. [Doc. 1 at 24].) In his ninth and final ground, Petitioner alleges that the trial court violated his privilege against self-incrimination and his right to due process as guaranteed by the Fifth and Fourteenth Amendments by not sua sponte declaring a mistrial due to the State's remarks during closing that referred to Petitioner's failure to testify. (Id. [Doc. 1 at 25].)

Respondent contends that grounds for relief numbered three, five, seven, and eight are procedurally barred and may not be considered on their merits; and that all of the grounds for relief lack merit.

The Court will address Respondent's procedural default argument before addressing the merits of any of Petitioner's claims.

## Discussion

Procedural bar.  Respondent argues that grounds three, five, seven, and eight are procedurally barred, and may not be considered on their merits, because Petitioner did not pursue them in his direct appeal.  In each of those grounds for relief, Petitioner alleges that the trial court violated his right to due process as guaranteed by the Fifth and Fourteenth Amendments: by granting the State's motion in limine preventing Petitioner from introducing evidence that Sims was charged with possessing the gun that was allegedly used in the offenses and that was found in the vehicle after the car chase (ground three); by denying Petitioner's motion to suppress the gun (ground five); by granting the State's motion to exclude Petitioner's statement to the police, which was made when Petitioner was arrested (ground seven); and by overruling his motions for judgment of acquittal at the close of the State's case and at the close of all the evidence because there was insufficient evidence to support the charges (ground eight).

It is well established that "[t]o be eligible for federal habeas corpus relief, a state prisoner must first exhaust his state law remedies and fairly present the facts and substance of his habeas claim to the state court."  **Carney v. Fabian**, 487 F.3d 1094, 1096 (8th Cir. 2007) (internal quotation marks omitted) (quoting Middleton v. Roper, 455 F.3d 838, 855 (8th Cir. 2006)); see also **Baldwin v. Reese**, 541 U.S. 27, 29 (2004).  Absent a showing of cause and prejudice, a federal habeas court may not reach the merits of "procedurally defaulted

claims in which the petitioner failed to follow applicable state procedural rules in raising the claims." **Sawyer v. Whitley**, 505 U.S. 333, 338 (1992).

Missouri requires the raising of constitutional claims at the first available opportunity. See **In re J.M.N.**, 134 S.W.3d 58, 73 (Mo. Ct. App. 2004); **In re T. E.**, 35 S.W.3d 497, 504 (Mo. Ct. App. 2001). Alleged trial court errors, including constitutional claims of trial court error, must be raised on direct appeal; for "[p]ost-conviction motions cannot be used as a substitute for direct appeal or to obtain a second appellate review." **State v. Clark**, 859 S.W.2d 782, 789 (Mo. Ct. App. 1993); accord **State v. Twenter**, 818 S.W.2d 628, 636 (Mo. 1991) (en banc) (a post-conviction proceeding "is not a substitute for direct appeal, and matters that properly should have been raised by direct appeal may not be litigated in a post-conviction proceeding"). "If the allegations of trial error are constitutional violations, they are not cognizable [in a post-conviction proceeding] unless exceptional circumstances are shown which justify not raising the constitutional grounds on direct appeal." **Clark**, 859 S.W.2d at 789; accord **Amrine v. State**, 785 S.W.2d 531, 536 (Mo. 1990) (en banc); **Allen v. State**, 903 S.W.2d 246, 247 (Mo. Ct. App. 1995). Therefore, if a trial court's alleged violation of the constitution is not raised on direct appeal, the claim is defaulted absent exceptional circumstances justifying the failure to raise the errors on direct appeal.

A review of the record discloses that Petitioner presented the state appellate court with the claim in ground three as point four of his direct appeal. The Court concludes, therefore, that ground three is not procedurally defaulted.

Petitioner did not, however, pursue grounds five, seven, and eight, which are alleged constitutional errors by the trial court, on direct appeal. In his argument supporting these grounds for relief, Petitioner has not pointed to any reason for his failure to pursue these claims on direct appeal. Therefore, there is no justification for, much less any exceptional circumstance justifying, Petitioner's failure to present those claims in his direct appeal, and those claims are procedurally defaulted.

"Unless a habeas petitioner shows cause and prejudice or that he is actually innocent of the charges, a [federal habeas] court may not reach the merits of procedurally defaulted claims in which the petitioner failed to follow applicable state procedural rules in raising the claims." **Skillicorn v. Luebbers**, 475 F.3d 965, 976-77 (8th Cir. 2007); see also **Sawyer**, 505 U.S. at 338. "'[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" **Greer v. Minnesota**, 493 F.3d 952, 957 (8th Cir. 2007) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). There is no exhaustive catalog of the objective impediments, nor have the precise contours of the cause requirement been clearly defined. **Ivy v. Caspari**, 173 F.3d 1136, 1140 (8th Cir. 1999). What has been established is that a "fail[ure] to recognize the factual or legal basis for a claim, or [a] fail[ure] to raise [a] claim despite recognizing it, does not constitute cause for a procedural default." **Murray**, 477 U.S. at 486.

Petitioner has not argued any cause for his failure properly to present these claims on direct appeal. Because no cause has been established for Petitioner's procedural default, it is

unnecessary to consider whether he has demonstrated prejudice.  **Abdullah v. Groose**, 75 F.3d 408, 413 (8th Cir. 1996) (en banc).

Petitioner's defaulted grounds may be reached absent a showing of cause and prejudice if he establishes that a failure to consider the claims' merits will result in a fundamental miscarriage of justice.  "Procedurally barring a claim that establishes actual innocence is considered a fundamental miscarriage of justice." **Cox v. Burger**, 398 F.3d 1025, 1031 (8th Cir. 2005).  A showing of actual innocence requires new evidence and a "show[ing] that 'it is more likely than not that no reasonable juror would have convicted him in light of th[at] new evidence.'" **Osborne v. Purkett**, 411 F.3d 911, 920 (8th Cir. 2005) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)); <u>accord</u> **House v. Bell**, 547 U.S. 518, 536-39 (2006) (<u>Schlup</u> standard applies to determine whether defaulted claims in a first federal habeas petition should be considered based on actual innocence).  "'Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.'" **Cagle v. Norris**, 474 F.3d 1090, 1099 (8th Cir. 2007) (quoting <u>Schlup</u>, 513 U.S. at 316).

Petitioner does not submit any new evidence of his actual innocence, nor does he allege that such evidence exists.  Therefore, grounds five, seven, and eight are procedurally barred and this Court will not consider those claims on their merits.  The Court will consider the merits of the six claims that are not procedurally barred, the claims presented in grounds one, two, three, four, six, and nine of Petitioner's federal habeas petition, with the ineffective

assistance of counsel claim in ground one discussed after the claims of trial court error in grounds two, three, four, six, and nine.

.    Merits - Standard of Review.    Title 28 U.S.C. § 2254(d) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) mandates that a federal court grant habeas relief on a claim that was adjudicated on its merits by the State courts *only* "when the state court's decision [is] contrary to, or involve[s] an unreasonable application of, clearly established federal law, as determined by the Supreme Court [of the United States], or the [state court] decision [is ]based on an unreasonable determination of the facts in light of the evidence presented in the state court." **de la Garza v. Fabian**, 574 F.3d 998, 1001 (8th Cir. 2009); accord **Christenson v. Ault**, 598 F.3d 990, 994 (8th Cir. 2010).

> A state court decision is contrary to clearly established federal law if it reaches a conclusion opposite to one reached by the [United States] Supreme Court on a question of law or decides the case differently than the [United States] Supreme Court has decided a case with a materially indistinguishable set of facts.

**de la Garza**, 574 F.3d at 1001; accord **Losh v. Fabian**, 592 F.3d 820, 823 (8th Cir. 2010) (quoting Williams v. Taylor, 529 U.S. 362, 412-13 (2000)).  "A state court decision involves an unreasonable application of clearly established federal law if, in the federal court's independent judgment, the relevant state court decision not only applied clearly established federal law incorrectly, but also did so unreasonably." **de la Garza**, 574 F.3d at 1001.  "The unreasonable application inquiry is an objective one." **Id.**; see **Losh**, 592 F.3d at 823 (under the unreasonable application clause of § 2254, a habeas petition may be granted "only if the

state court applied the correct governing legal principle in an objectively unreasonable manner" (citing <u>Williams</u>, 529 U.S. at 409).

In reviewing state court proceedings to ascertain whether they are contrary to or involve an unreasonable application of clearly established federal law, this Court "is limited to the record that was before the state court that adjudicated the claim on the merits." **<u>Cullen</u> <u>v. Pinholster</u>**, 131 S. Ct. 1388, 1398 (2011). Additionally, this Court's review is limited to consideration of the United States Supreme Court precedents at the time the state court issues its decision on the merits. **<u>Greene v. Fisher</u>**, 132 S. Ct. 38, 44 (2011) (relying on <u>Cullen</u>, <u>supra</u>); <u>accord</u> **<u>Losh</u>**, 592 F.3d at 823 ("[o]nly rulings in [United States] Supreme Court decisions issued before the state court acts are considered clearly established federal law, for a state court does not act contrary to or unreasonably apply clearly established federal law if there is no controlling [United States] Supreme Court holding on the point" (citations omitted)). The state court does not need to cite to Supreme Court cases, "'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" **<u>Revels v. Sanders</u>**, 519 F.3d 734, 739 (8th Cir. 2008)) (quoting <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002) (per curiam)).

Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" **<u>Harrington v. Richter</u>**, 131 S. Ct. 770, 785 (2011); <u>accord</u> **<u>Brown v. Luebbers</u>**, 371 F.3d 458, 462 (8th Cir. 2004) (en banc) ("[T]he 'summary nature' of the [state court's] discussion of [a] federal constitutional question does not preclude application of the AEDPA standard"). "When a federal claim has been presented

to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." **Harrington**, 131 S. Ct. at 784-85; <u>accord</u> **Johnson v. Williams**, 132 S. Ct. 1088, 1094 (2013) (<u>Harrington</u> presumption applies "when a state-court opinion addresses some but not all of a [petitioner]'s claims"). This presumption may "in some limited circumstances be rebutted." **Johnson**, 132 S. Ct. at 1096. When a state court issues a summary ruling, the petitioner can only satisfy the "unreasonable application" prong of habeas review by showing there is no reasonable basis for the state court decision, which the federal habeas court assesses by determining what arguments or theories could have supported the state court decision and "'whether fairminded jurists could disagree that those arguments or theories are inconsistent'" with a prior decision of the United States Supreme Court. **Cullen**, 131 S. Ct. at 1402 (quoting <u>Harrington</u>, 131 S. Ct. at 784, 786).

Additionally, in a federal habeas action pursued by a state prisoner, "a determination of a factual issue made by a State court shall be presumed to be correct" unless rebutted by the petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The deference owed by a federal habeas court to a state court's findings of fact includes deference to state court credibility determinations, **Smulls v. Roper**, 535 F.3d 853, 864 (8th Cir. 2008) (en banc), and to "[a] state court's findings of fact made in the course of deciding" an ineffective assistance of counsel claim, **Odem v. Hopkins**, 382 F.3d 846, 849 (8th Cir. 2004). Moreover, the presumption of correctness of findings of fact applies to the factual determinations made by a state court at either the trial or appellate levels. **Smulls**, 535 F.3d at 864-65.

Grounds Two, Three, Four, and Six: Admission of Evidence. Petitioner challenges, as a violation of his rights to due process and a fair trial, the trial court's denial of his motion in limine which allowed the prosecutor to present evidence that Petitioner was involved in a car chase about one day after the offenses (ground two); the trial court's granting of the state's motion in limine preventing Petitioner from introducing evidence that Sims was charged with possessing the gun that was involved in the offenses and found in the vehicle after the car chase (ground three); the trial court's denial of his motion to suppress Victim's identification of Petitioner, which allowed Victim to testify to her identification of Petitioner (ground four); and the trial court's denial of his motion for mistrial, which allowed the prosecutor to show the jury portions of the newscast videotape the trial court had previously ruled were inadmissible (ground six).

A federal habeas court may grant relief based on a state court's admission of evidence only when the "'evidentiary ruling infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process.  Turner v. Armontrout, 845 F.2d 165, 169 (8th Cir. . . . 1988)." **Abdi v. Hatch**, 450 F.3d 334, 338 (8th Cir. 2006).  To support habeas relief on the basis of a denial of due process, a state court's evidentiary rulings must be "so conspicuously prejudicial or of such magnitude as to fatally infect the trial." **Bounds v. Delo**, 151 F.3d 1116, 1119 (8th Cir. 1998) (quotation marks omitted) (quoting Parker v. Bowersox, 94 F.3d 458, 460 (8th Cir. 1996)).  The petitioner must show there is a reasonable probability that the verdict would have been different absent the allegedly erroneous evidentiary ruling.  **Harris v. Bowersox**, 184 F.3d 744, 752 (8th Cir. 1999); **Meadows v.**

**Delo**, 99 F.3d 280, 283 (8th Cir. 1996); accord **Troupe v. Groose**, 72 F.3d 75, 76 (8th Cir. 1995).  The burden to establish a state court's evidentiary ruling constituted a due process violation is "much greater than that required on direct appeal and even greater than the showing of plain error." **Mendoza v. Leapley**, 5 F.3d 341, 342 (8th Cir. 1993) (per curiam).

In his second ground, Petitioner urges the trial court improperly admitted evidence of the car chase that occurred during the evening following the offenses, when Petitioner drove the stolen vehicle and was arrested at the end of the car chase.  (See, e.g., Trial Tr., Resp't Ex. A, at 285-90; 297-98.)  Finding that the evidence was "material [as] to how [Petitioner] was taken into custody and arrested," the trial court denied Petitioner's motion in limine and allowed "evidence of the chase or the apprehension of" Petitioner.  (Pet'r Mot. Limine, Legal File, Resp't Ex. B, at 32-33; Trial Tr., Resp't Ex. A, at 187-88.)  Petitioner has not established a due process violation based on the admission of this evidence, which explains the location and arrest of Petitioner after the offenses.  Even in the absence of the car chase evidence the outcome of trial would be the same because it was proper to introduce evidence that Petitioner was arrested, within twenty-four hours of the offenses, while driving the stolen vehicle.

In his third ground, Petitioner urges the trial court improperly excluded evidence that Sims was accused of possessing the gun found in the vehicle at the end of the car chase.  Prior to trial, the trial court did not prohibit the introduction of such evidence.  (Trial Tr., Resp't Ex. A, at 171-80.)  Specifically, the trial judge stated he was "inclined to allow the defense to bring out that another individual was charged with possession, but that doesn't mean that [Petitioner] could not have had the gun and used the gun and effected the robbery."

(Id. at 175-76.)  Petitioner thereafter only provided an offer of proof outside the presence of the jury.  (Id. at 379-82.)  Whether or not Petitioner's failure to introduce this evidence was a result of a trial court ruling, the omission of this evidence does not establish a due process violation.  As the trial court judge noted, the fact another person was charged with possession of the gun the day after the robbery does not establish that Petitioner did not use the gun during the robbery.  Therefore, admission of this evidence would not have changed the outcome of the trial.

In his fourth ground, Petitioner challenges the trial court's denial of Petitioner's motion to suppress Victim's identification.  (Pet'r Mot. Suppress Identification, Resp't Ex. B, at 24-25.)  Petitioner bases this argument on the fact Victim saw a picture of Petitioner on a television newscast before seeing the photo arrays.  (Id.)  Petitioner does not, however, challenge the suggestiveness of the photo arrays themselves.

The record establishes that Victim looked directly at Petitioner during the robbery because he was at the driver's door of the car as Victim got out of the car. (Trial Tr., Resp't Ex. A, at 202, 204, 205, 209.)  Victim identified Petitioner, at the time of the offenses, as brown-skinned, with little facial hair, and  "wearing a blue – light blue polo shirt with a long sleeve shirt underneath . . . [;] wearing braids . . . to the side[; and wearing] light blue jeans, faded jeans[; being about 5-foot-7[ tall and not] heavy[; and having] gold in his mouth."  (Id. at 260, 210-11.)  At the time of Petitioner's arrest, he had braids in his hair and two gold teeth, and was wearing a blue shirt.   (Id. at 298.)

About two days after the offenses Victim was advised by Detective March that "her vehicle had been recovered in Illinois and was involved in a chase.  They had locked up several people in it . . . .  'Your vehicle was on the news.  We need you to come in and get with us on trying to put the pieces together.'" (Trial Tr., Resp't Ex. A, at 365.)  Victim testified similarly that

> [she] was informed by Officer March . . . that they had recovered the vehicle that [she] had rented and that it was involved in a transaction over in Illinois and it was on the news, and so [she] watched . . . the late news . . . and that's when [she] saw . . . two photos of two guys and what had went on over there.

(Id. at 210.)  She noted that, during the newscast, she recognized Petitioner immediately as the person who had robbed her of the vehicle.  (Id. at 213, 230, 231.)

When Victim went to the police station about five days after the offenses to look at photo arrays, she testified that Officer Mercier

> handed [her] the two sheets of photos [and] asked [Victim] if [she] could describe any of those guys on the photos.  [Officer Mercier] didn't say that they were the guys that was involved or anything, she just showed [Victim] the photos and [Victim] looked at the photos and . . . sign[ed her] name on the photo that [she] recognized.

(Id. at 214, 262.)  At the time of the photo array, Officer Mercier, as she testified, advised "[Victim] that the . . . subject [who] robbed her may or may not be in the photo spread and for her to just take her time and look at [the] two photo spreads," and then she handed Victim the two photo spreads.  (Id. at 333.)   Officer Mercier stated that she presented Victim with a photo spread that included Sims because Victim had said the robber had medium length braids, and both Petitioner and Sims had braids and were in the Victim's car after the car

chase. (Id. at 334.) Victim "immediately" recognized Petitioner in the photo array "[f]rom looking at him at the time that it happened. [She] remembered [his] face [and] facial features." (Id. at 234, 334.)

Under the circumstances, Petitioner has not established a due process violation in the admission of Victim's identification of Petitioner. As the trial court found at the conclusion of all the evidence, Victim was unwavering in her identification of Petitioner. Petitioner had the opportunity to observe Petitioner's face at close range during the robbery and the photo arrays were not unduly suggestive in that no law enforcement officer directed Victim to a particular photograph and the arrays contained only one picture each of Petitioner and of Sims. While Detective March told Petitioner the news was reporting on the car chase, he did not tell Petitioner to watch the newscast. Petitioner has not satisfied his heavy burden to demonstrate the state trial court's admission of Victim's identification was "so conspicuously prejudicial or of such magnitude as to fatally infect the trial."

For ground six, Petitioner challenges the trial court's failure to grant a mistrial after the State showed the jury portions of a newscast videotape depicting a wreck that occurred during the car chase.

Prior to trial Petitioner asked that portions of the newscast videotape that Victim had watched be redacted, specifically the portions showing that officers were injured during the car chase and reporting that Petitioner had charges in Illinois. (Trial Tr., Resp't Ex. A, at 181.) During a discussion with the trial court, the parties agreed to show just the portion of the newscast videotape containing the pictures of Petitioner and Sims, and the trial court

allowed evidence of the car chase but disallowed evidence of injuries to officers occurring during that chase.  (Id. at 186-89.)  Petitioner asked for a mistrial during the subsequent showing of the newscast videotape on the ground the videotape shown to the jury included a portion previously ruled inadmissible.  (Id. at 227.)  The trial court described the challenged portion shown to the jury as depicting "an automobile that was not on the street obviously, that's turned over on its side with a window that has been broken out," and denied the mistrial request.  (Id. at 228.)  The newscast portion was again played to the jury, over Petitioner's objection, and then again without objection.  (Id. at 229-30.)

The admission of a brief videotaped image of an unspecified overturned vehicle with a broken window does not violate Petitioner's right to due process and does not clearly violate the trial court's ruling that police officer injuries could not be disclosed.  This Court cannot find that omission of this image would have changed the verdict.  Petitioner has not satisfied his burden of establishing a due process violation in the admission of that image.

The state appellate court's decision to uphold  the admission of the evidence of the car chase, the failure to introduce evidence that Sims was charged with possession of the gun, the admission of Victim's identification of Petitioner, and the admission of the newscast videotape was not contrary to or an unreasonable application of clearly established federal law. Additionally, there is no showing that the state courts unreasonably determined the facts in light of the evidence presented.

Grounds two, three, four, and six are denied.

Ground Nine: Trial Court's Failure Sua Sponte to Declare a Mistrial Based on Prosecutor's Closing Argument Reference to Petitioner's Failure to Testify.  In ground nine, Petitioner alleges that the trial court violated his privilege against self-incrimination and his right to due process as guaranteed by the Fifth and Fourteenth Amendments by not sua sponte declaring a mistrial due to the prosecutor's remarks during closing that referred to Petitioner's failure to testify.

Specifically, Petitioner challenges the following remarks made by the prosecutor during rebuttal:

> How do we know that [Petitioner] did it?  The defense - this evidence is uncontroverted. [Petitioner] was driving th[e stolen] car the next day.  The defense wants to make light of that, but isn't it a coincidence?  Reasonableness in light of all the testimony. [Petitioner] would have you believe that he just happens to be driving this stolen car the next day, that he just happens to be driving a stolen car with that gun in it the next day, that it just happens to be a gun that is the exact same kind of gun that robbed [Victim] the night before, and that [Petitioner] just happens to be the person that she picked out. . . .

> \*   \*   \*

> Manner while testifying. [Victim] is - how was [Victim] when she came in?  She was quiet.  She's composed.  She's embarrassed.  She's told you repeatedly over and over again.  Manner while testifying.  You heard the other state's witnesses, the officers.  That testimony is uncontroverted.  The defense tried to distract you with some other evidence I guess about police conduct[.] I'm not quite sure.  Every one of you is here because you agreed that we're not here to decide policy for the police.  This is just a distraction about whether [Petitioner] committed the crime of robbery in the first degree and armed criminal action. [Petitioner] has a right not to testify and you have an instruction about that.  They are trying to distract you.

(Trial Tr., Resp't Ex. A, at 421-22.)  On direct appeal, the state appellate court summarily denied Petitioner's point seeking plain error review of the trial court's failure sua sponte to

declare a mistrial due to this closing argument by the prosecutor.  (Pet'r Br., Resp't Ex. C, at 8 and 14; State v. Herndon, 220 S.W.3d 888 (Mo. Ct. App. 2007).)

The United States Court of Appeals for the Eighth Circuit has noted there is a "split of authority in [the] circuit about whether [a state appellate court's] plain error review 'cures' [any] procedural default" that may result from such review, see **Shelton v. Purkett**, 563 F.3d 404, 408 (8th Cir. 2009), and about "the appropriateness of plain-error review in the habeas context," see **Toua Hong Chang v. Minnesota**, 521 F.3d 828, 832 n.3 (8th Cir. 2008).  In both of these cases, the Eighth Circuit applied the AEDPA's standard of review to the court's consideration of the merits of the claims that had been considered by the state courts under plain error review only.  **Shelton**, 563 F.3d at 407-08 (not resolving the procedural default issues and concluding, based on the assumption the claims were subject to review, that "the AEDPA mandates a deferential review of a state court decision"); **Toua Hong Chang**, 521 F.3d at 831-33 (declining to apply plain-error analysis and instead applying analysis under Brecht v. Abrahamson, 507 U.S. 619 (1993), which "subsumes" the AEDPA test).  Because the parties do not raise questions or challenges to the propriety of applying the AEDPA's principles in this Court's consideration of this ground, the Court will apply the AEDPA's standard to the consideration of  the merits of ground nine.

To the extent the prosecutor mentions that Petitioner had a right not to testify and referred to the instruction to that effect, the comments are not error but a correct statement of the law and an appropriate reference to one of the trial court's instructions.

To the extent the prosecutor mentions that evidence was "uncontroverted," such a reference may, at most, be an indirect comment on Petitioner's failure to testify.  While a prosecutor's direct comment on a defendant's failure to testify is prohibited by the constitution, see **Griffin v. California**, 380 U.S. 609, 615 (1965),  the United States Supreme Court "has never clearly established that a prosecutor may not comment on the evidence in a way that indirectly refers to the defendant's silence," **Edwards v. Roper**, 688 F.3d 449, 460 (8th Cir. 2012).  That is the type of comment at issue here: the prosecutor referred to the evidence as "uncontroverted" and Petitioner argues that such a comment is a constitutionally prohibited comment on Petitioner's silence during trial.  To the contrary, the Eighth Circuit has characterized this type of comment by the prosecutor as a reference "to the clarity and strength of the state's evidence," and not as a constitutionally prohibited reference to a defendant's silence.  **Ramsey v. Bowersox**, 149 F.3d 749, 756 (8th Cir. 1998) (discussing a prosecutor's comments that the evidence was "uncontradicted").

To the extent the prosecutor's "uncontroverted" comments may be considered improper references to Petitioner's silence, this Court must determine whether the comments "manifest the prosecutor's intent to call attention to [Petitioner's silence] or would be naturally and necessarily taken by a jury as a comment on [Petitioner]'s failure to testify."  **Robinson v. Crist**, 278 F.3d 862, 866 (8th Cir. 2002) (internal quotation marks omitted) (quoting Graham v. Dormire, 212 F.3d 437, 439 (8th Cir. 2000)).  Additionally, the Court must "determine if [the challenged comments] had a '"substantial and injurious effect or influence in determining the jury's verdict."'  Brecht, 507 U.S. at 637 (quoting Kotteakos v. United States, 328 U.S.

750, 776 (1946))." **Robinson**, 278 F.3d at 866.  Having considered the trial record and the parties' closing arguments, the Court concludes the challenged comments did not focus the jury's attention on Petitioner's silence, would not "be naturally and necessarily taken" by the jury as a comment on Petitioner's silence, and did not have a "substantial and injurious effect or influence" on the verdict.

Therefore, the Missouri appellate court's decision to affirm Petitioner's conviction despite Petitioner's challenge to the prosecutor's closing was not contrary to or an unreasonable application of clearly established federal law.  Additionally, there is no showing that the state courts unreasonably determined the facts in light of the evidence presented.

Ground nine is denied.

Ground One: Ineffective Assistance of Trial Counsel in Failing Timely to Object to the Prosecutor's Closing Argument.   In his first ground, Petitioner alleges that Kellerman provided ineffective assistance of counsel, in violation of the Sixth and Fourteenth Amendments, by failing to object to the prosecutor's statements, during closing, that improperly referred to Petitioner's failure to testify.  Petitioner pursued this ineffective assistance of trial counsel claim in his amended motion for post-conviction relief and in his post-conviction appeal.

The Sixth Amendment right to the assistance of counsel is a right to the effective assistance of counsel.  **Marcrum v. Luebbers**, 509 F.3d 489, 502 (8th Cir. 2007) (citing Kimmelman v. Morrison, 477 U.S. 365, 377 (1986)).  In **Strickland**, supra, the Supreme Court established a two-part test for determining whether or not an attorney provided effective

assistance of counsel.  The petitioner must establish both deficient performance, i.e., that

"counsel's representation fell below an objective standard of reasonableness," and prejudice,

i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different."  **Strickland**, 466 U.S. at 687-88, 694;

accord **Marcrum**, 509 F.3d at 502; **Kellogg v. Skon**, 176 F.3d 447, 452 (8th Cir. 1999).

To establish that counsel's performance was deficient, a petitioner must show that

counsel "'made errors so serious that counsel was not functioning as the "counsel" guaranteed

the defendant by the Sixth Amendment.'"  **Greiman v. Thalacker**, 181 F.3d 970, 972 (8th

Cir. 1999) (quoting Strickland, 466 U.S. at 687).  More specifically, a petitioner must

demonstrate that "counsel's performance was so deficient as to fall below an objective

standard of the customary skill and diligence displayed by a reasonably competent attorney."

**Armstrong v. Kemna**, 534 F.3d 857, 863 (8th Cir. 2008) (citing Strickland, 466 U.S. at 687-

89).  "Only reasonable competence, the sort expected of the 'ordinary fallible lawyer,' is

demanded by the Sixth Amendment."  **White v. Helling**, 194 F.3d 937, 941 (8th Cir. 1999)

(quoting Nolan v. Armontrout, 973 F.2d 615, 618 (8th Cir. 1992)).  The Court is highly

deferential in analyzing counsel's conduct and "indulg[es] a strong presumption that counsel's

conduct falls within the wide range of professional judgment.'"  **Armstrong**, 534 F.3d at 863

(quoting Middleton, 455 F.3d at 846).

To establish prejudice, a petitioner must demonstrate "'a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been

different.'"  **Armstrong v. Kemna**, 590 F.3d 592, 595-96 (8th Cir. 2010) (quoting

McCauley-Bey v. Delo, 97 F.3d 1104, 1105 (8th Cir. 1996)). "'A reasonable probability is [a probability] sufficient to undermine confidence in the outcome.'" **Id.** at 596 (quoting McCauley-Bey, 97 F.3d at 1105); accord **Carroll v. Schriro**, 243 F.3d 1097, 1100 (8th Cir. 2001) (quoting Strickland, 466 U.S. at 694). The petitioner bears the burden of showing such a reasonable probability. **Lawrence v. Armontrout**, 961 F.2d 113, 115 (8th Cir. 1992).

The question of prejudice from counsel's performance need not be reached if the performance was not deficient. See **Parkus v. Bowersox**, 157 F.3d 1136, 1140 (8th Cir. 1998). Conversely, the question of counsel's allegedly deficient performance need not be reached if a petitioner has failed to show prejudice. See **Strickland**, 466 U.S. at 697; **Williams v. Locke**, 403 F.3d 1022, 1025 (8th Cir. 2005).

Importantly, when comments made during a prosecutor's closing argument are not objectionable they are not a basis for an ineffective assistance of counsel claim. **Epps v. State**, 901 F.2d 1481, 1483 (8th Cir. 1990); see also **Williams v. Lockhart**, 797 F.2d 344, 347 (8th Cir. 1986) (rejecting an ineffective assistance of trial counsel claim in relevant part because the prosecutor's closing argument was not improper).

Here, the Missouri Court of Appeals' summary denial of Petitioner's direct appeal constitutes a determination that there was no error in the prosecutor's comments, because one of the points on appeal challenged the trial court's failure sua sponte to declare a mistrial as a result of those comments. The state appellate court also rejected this ineffective assistance of counsel claim in affirming the denial of Petitioner's post-conviction motion. Additionally, this Court concluded, in its discussion of ground nine above, that the challenged portion of

the prosecutor's argument did not violate Petitioner's constitutional rights. Because the portion of the prosecutor's closing argument challenged by Petitioner was not objectionable, the failure of Petitioner's trial attorney to object to that closing does not constitute the ineffective assistance of counsel.[6] The decision of the state appellate court rejecting this ineffective assistance of counsel claim in Petitioner's post-conviction appeal was not contrary to, or an unreasonable application of, clearly established Federal law. See **Kinder v. Bowersox**, 272 F.3d 532, 554 (8th Cir. 2001) (noting the state court reasonably applied Strickland in deciding that it was not "objectively unreasonable for counsel to fail to object to" a prosecutor's closing argument that had not been found improper). Moreover, the state court's decision is not based on an unreasonable determination of the facts.

Ground one is denied.

## Conclusion

After careful consideration of Petitioner's nine grounds for relief, the Court will deny Petitioner's federal habeas petition upon finding that three of those claims (grounds five, seven, and eight) are procedurally defaulted and may not be considered on their merits; and finding that the remaining six claims (grounds one, two, three, four, six, and nine) lack merit. Accordingly,

---

[6] Additionally, counsel's decision not to object to the comments was reasonable, because an objection to any ambiguous reference to Petitioner's failure to testify in the prosecutor's argument would be an "invit[ation to] the jury to ponder the ambiguous statement." **Bussard v. Lockhart**, 32 F.3d 322, 324 (8th Cir. 1994).

**IT IS HEREBY ORDERED** that the 28 U.S.C. § 2254 petition of Zachary Herndon is **DENIED** without further proceedings.

An appropriate Judgment shall accompany this Memorandum and Order.

 /s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 26th day of March, 2013.